BARNEY *v.* INDIANA RAILWAY COMPANY ET AL.

[No. 19,228.     Filed October 3, 1901.]

CONTRACTS.—*Street Railroads.*—Plaintiff entered into a written contract with a street railroad company by the terms of which the railroad company was to extend its lines to plaintiff's driving park, plaintiff to pay for the steel rails, for which he was to be repaid from the receipts of the company, except $500, which was to be donated by him, the railroad company to lay the track and operate it, and have it ready for operation at a certain date. No definite time during which the company should operate the road was fixed by the contract. The road was constructed and operated for four years in accordance with the terms of the contract, when the company ceased operation and removed the tracks. Plaintiff brought suit, alleging in one paragraph that it was the intention of the parties that the road should be operated permanently and perpetually, and in another paragraph that it was the intention that it should be operated a reasonable time, and that a reasonable time would be twenty-five years. *Held*, that construing the contract in the light of the position and surroundings of the parties, no breach thereof was shown by the complaint, since the contract cannot be enlarged, extended or contradicted by allegations concerning the intention or understanding of the parties.

From St. Joseph Circuit Court; *Lucius Hubbard,* Judge.

Action by Samuel E. Barney against the Indiana R. Co. and others on contract. From a judgment for defendants on demurrer to complaint, plaintiff appeals.  *Affirmed.*

*J. M. Van Fleet* and *V. W. Van Fleet,* for appellant.

*W. L. Stonex, C. C. Black, C. W. Miller* and *J. S. Drake,* for appellees.

MONKS, C. J.—It appears from the record that appellant owned a tract of land near the city of Elkhart, Indiana, known as "Barney's driving park" which was fitted up and maintained by him as a driving and racing park at an expense of $75,000; that on and prior to August 25, 1895, the Indiana Electric Railway Company owned and was operating a street railway in said city, and that the said driving

park was about three-eighths of a mile distant from the said railway's track on Main street in said city; that in order to obtain an extension of said railway track north along Main street to said park appellant and said railway company entered into a contract in writing as follows: "This indenture made this 28th day of August, 1895, by and between Samuel E. Barney, party of the first part, and the Indiana Electric Railway Company, party of the second part, witnesseth: That the said Samuel E. Barney agrees to pay for and deliver to the said party of the second part sufficient steel rails to extend the track of the Indiana Electric Railway Company from Beardsley avenue to Barney's driving park northward on North Main street on the following terms and conditions, to wit: The said Barney donates $500 of the cost price of said iron and he is to receive pay for the balance of the said iron as follows, to wit: The receipts of said Indiana Electric Railway Company are to be turned over to said Barney daily until said balance on said iron has been paid for. The Indiana Electric Railway Company reserves the right and option to pay the balance of the purchase price of said steel rails at any time before they have been paid for by the receipts of said company. Said Indiana Electric Railway Company is to place said rails, lay said track and operate it, and have it ready for operation as early as the 5th day of September, 1895; and it is further mutually agreed and understood that the title to all said rails shall be and remain in said Samuel E. Barney, and not pass from him to the said Indiana Electric Railway Company until the purchase price shall have been fully paid. Said Indiana Electric Railway Company shall negotiate the purchase of said rails and shall fix the price at which they are to be paid for by said Barney. In witness whereof the said Samuel E. Barney and the said Indiana Electric Railway Company by James Burns, its president, and Wilber F. Stonex, its secretary, have hereunto set their hands and seals the day and date first above written. (Seal.) Samuel E. Barney,

Indiana Electric Railway Company, by J. J. Burns, President. Attest: Wilber Stonex, Secretary."

In accordance with said contract appellant paid for sufficient steel rails to make said extension and the same were delivered to said company, $500 of the cost and value of said rails being donated by appellant. The company placed said rails and laid said track so as to extend said railway to said park, and began to operate the same on or about September 5, 1895, as provided in the contract, and continued to operate the same until it sold said road to the Indiana Railway Company. The last named company continued to operate said road and the part extending to said driving park until about the 25th day of July, 1899, when said company without the consent and over the protest of appellant took up the rails and ties of said railway track constructed under said contract and removed them and wholly abandoned and ceased to use that part of its railway.

The complaint is in two paragraphs, the first, in addition to the foregoing facts, alleges "that it was the intention and understanding of the parties in making said contract that said railway track should remain and be operated permanently and perpetually; that the Indiana Railway Company at the time it purchased said road had full notice and knowledge of said contract and the rights of appellant; that his damages are great and irreparable; that with said railway extending to said driving park the latter is worth $75,000, and that the removal of said railway track caused a decrease of $70,000 in the value of said driving park." The second paragraph is the same except it alleges "that it was the intention and understanding of the parties in making said contract that said railway track should remain and be operated a reasonable time; that a reasonable time would be twenty-five years." The prayer is for a mandatory injunction "to compel appellees to replace and operate said track; and if that relief cannot be had, for $70,000 damages, and if this relief cannot be had, for

$1,000 damages, being the $500 donated and interest." The court sustained a demurrer for want of facts to each paragraph, and appellant refusing to plead further final judgment was rendered against him.

The ground upon which appellant seeks a recovery is that after operating the road for about four years, the company ceased to operate it and removed the part of the track described in the contract. By the terms of the contract sued upon the company was to "place said rails, lay said track and operate it, and have it ready for operation as early as the 5th day of September, 1895". The allegations of the complaint show that this was done in conformity with the provisions of the contract, and that the company and its successor continued to operate the same until July 25, 1899. These allegations do not show any breach of said contract by appellees. Appellant advanced the money to purchase the iron, and made the donation of $500 out of the money so advanced to have the track built and operated by a certain day. It was a gift executed when the company built and operated the road by the day named. The donation for the construction of the track cannot be held to constitute a consideration for operation for any definite period.

If the company was willing to operate the part of said road mentioned for any definite period, and appellant so desired, such a clause should have been incorporated in the contract. As the contract does not fix any definite time during which the company should operate the road, the right to determine that question, so far as appellant is concerned, remained with the company. It may be that appellant believed that if he secured the construction of the road to the park that the profits of the company on that part of the road would be such as to secure its perpetual operation. It is true that the contract sued upon may be read and construed in the light of the position and surroundings of the parties in regard to the subject of the contract (*Ransdel* v. *Moore,* 153 Ind. 393, and cases cited), but the same cannot

Indianapolis St. R. Co. *v.* Robinson.

be enlarged, extended, or contradicted by allegations concerning the intention or understanding of the parties. The intention of the parties must be determined from the contract read in the light of their situation and surroundings.

It will be observed that the rights and interests of the public are in no way involved in this action.

*Pierce* v. *Tennessee, etc., R. Co.,* 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591, is the only case cited by appellant, but that case does not sustain his contention. Judgment affirmed.

Baker, J., did not participate in this decision.