WARRUM ET AL. *v.* WHITE, ADMINISTRATRIX, ET AL.

[No. 21,170.   Filed January 15, 1909.]

1.  CONTRACTS.— *Construction.*— *Words.*— The leading · purpose in construing a contract is to ascertain the intent, and in determining such intent, the court will consider the position and surroundings of the parties at the time of the execution thereof. p. 577.

2.  SAME.—*Intent.*—*Words.*—*Construction.*—The intention of the parties is to be deduced from the whole contract, the words thereof being given their ordinary and popular meaning, unless evidently used in a different sense.  p. 577.

3.  SAME.— *Between Widow and Children.*— *Conveyances.*— *Decedents' Estates.*—"*Revert.*"—A contract by which the ancestor's children and grandchildren gave to the widow, during life or her widowhood, their undivided two-thirds interest in decedent's farm, such widow to pay the ancestor's debts and "said farm, together with its appurtenances," to "revert" to the legal heirs equally, gives to such heirs, upon the death of the widow, her undivided one-third interest, as well as the two-thirds owned by them originally, the word "revert" being used in the sense of "go" or "pass."   p. 577.

4.  DECEDENTS' ESTATES.— *Life Estates.*— *Liability for Debts.*— Where a widow conveyed to her children and grandchildren her interest in her husband's lands, the conveyance to be effective at her death, such interest, upon her death, is not liable for her debts.  p. 578.

5. PLEADING.—*Complaint.*—*Sales of Real Estate to Pay Debts.*—*Statutes.*—*Decedents' Estates.*—A petition to sell a decedent's real estate for the payment of debts must allege the things required by the statute (§2854 Burns 1908, §2338 R. S. 1881), or it will be insufficient on demurrer. p. 579.

From Hancock Circuit Court; *Robert L. Mason,* Judge.

Petition by Victoria L. White, as administratrix of the estate of Polly Lineback, deceased, against Matilda Warrum and others. From a decree for petitioner, Matilda Warrum and others appeal. *Reversed.*

*Henry Warrum, William Ward Cook* and *Charles H. Cook,* for appellants.

*Elmer J. Binford* and *Edward W. Felt,* for appellee White.

MONKS, J.—This proceeding was brought by the administratrix of the estate of Polly Lineback, deceased, to sell the undivided one-third of certain real estate, to pay the indebtedness of said estate. Such proceedings were had that the court ordered the sale of the real estate as asked for in the petition.

The errors assigned call in question the action of the court in overruling the demurrer for want of facts to the amended petition, and in sustaining appellees' demurrers for want of facts to the second paragraph of answer and to the amended cross-complaint.

The second paragraph of the answer and the cross-complaint are founded upon a written contract, and are substantially the same. It appears therefrom that Jonathan Lineback died intestate in 1874, the owner in fee simple of seventy acres of land described in the petition. After his death, Polly Lineback, his widow, who inherited the undivided one-third of said land in fee simple, and their children and grandchildren, who inherited the undivided two-thirds thereof in fee simple, executed a contract in writing, by which said children gave to her their undivided two-

thirds of said land during her life, or so long as she remained a widow, she to have all the profits and proceeds of said farm, or such portion thereof as is necessary to support her during her widowhood, and the remainder, if any, to be spent in improving the farm, in consideration of which said Polly Lineback covenanted and agreed that she would "pay all the demands that may come against said estate, that have not been liquidated, keep the taxes paid on said real estate, properly till the cultivated lands and harvest the crops from the same, or have such done at her expense, and pay only a reasonable hire for the same, and, further, take proper care of the appurtenances of said farm, keep said farm in good condition, and at the death of said Polly Lineback or her remarriage said farm, together with its appurtenances, shall revert to the legal heirs equally." Said Polly Lineback took possession of said real estate under said agreement and occupied and controlled the same from the date of said agreement in 1874 until her death in February, 1907, and received and appropriated to her own use and benefit the rents and profits of said real estate. Said children and grandchildren of said Jonathan and Polly Lineback living at the time of the death of said Polly, and the descendants of those who were then deceased, took possession of said real estate after her death, and claimed "to own the same in fee simple, not only the undivided two-thirds as the heirs of Jonathan Lineback, but also, under and by virtue of said contract, the undivided one-third thereof which said Polly Lineback inherited from her said husband, and that said Polly had no interest in said real estate, and the same was not liable to be sold to make assets to pay the indebtedness of her estate."

Appellees insist "that said contract is not such an instrument as will carry title from one party to another, nor is it a contract for the sale of real estate; that the clause in the contract, that 'at the death of said Polly Lineback * * * said farm, together with its appurtenances, shall revert to

the legal heirs equally,' could only apply to two-thirds, the use of which had been granted to said Polly during her lifetime or widowhood, for the term 'revert' necessarily implies that the one to whom the property reverts has previously owned the same and has granted some interest therein upon certain conditions, upon the happening of which the interest granted reverts to the person who had formerly granted their interest.''

The leading purpose in the construction of contracts is to ascertain the intent of the parties. In ascertaining this intent, the court will, if necessary, consider the contract

1. in the light of the position and surroundings of the parties attending its execution. 17 Am. and Eng. Ency. Law (2d ed.), 21-23; *Barney* v. *Indiana R. Co.* (1901), 157 Ind. 228, 231, 232; *Ransdel* v. *Moore* (1899), 153 Ind. 393, 401, 53 L. R. A. 753, and authorities cited; *Howard* v. *Adkins* (1906), 167 Ind. 184, and authorities cited.

The intent is to be determined from the whole contract, and every clause, and even every word therein, when possible, should have assigned to it some meaning. While

2. the words are to be taken in their ordinary and popular sense, they will not be so construed if the intention of the parties, as manifested by the contract, shows that they are used in a different sense. 9 Cyc., 578, 579, 582, 585; 17 Am. and Eng. Ency. Law (2d ed.), 19; Bishop, Contracts (2d ed.), §§380, 382-384, 404; *Evansville, etc., R. Co.* v. *Meeds* (1858), 11 Ind. 273; *Durland* v. *Pitcairn* (1875), 51 Ind. 426, 443; *Beard* v. *Lafton* (1885), 102 Ind. 408, 411; *Russell* v. *Merrifield* (1892), 131 Ind. 148; *Kennedy* v. *Kennedy* (1898), 150 Ind. 636.

To entitle the "legal heirs" of Jonathan and Polly Lineback to take possession of and own the undivided two-thirds of said real estate at her death, it was not necessary

3. to provide that the same should revert to them, because the life estate granted by said heirs to Polly

Lineback terminated at her death, and they, as the owners of the fee of said undivided two-thirds, were entitled to the possession thereof at that time without any provision that the same revert to them. The use of the word "revert" was therefore wholly unnecessary, if held to apply only to the undivided two-thirds of said real estate already owned in fee simple by said "legal heirs." The provision, however, is not that the undivided two-thirds of said farm shall revert to said legal heirs, but that the "farm, together with its appurtenances, shall revert to the legal heirs equally." It is clear that it was the intention of the parties that the entire farm "revert" to said legal heirs, for that is the provision in the contract. Applying the rules of construction heretofore stated, and giving effect to every word and clause in said contract, it is evident that it was the intention of the parties that the undivided one-third of said real estate inherited by said Polly Lineback from her husband should be the property of the "legal heirs" under said contract, and that the word "revert" was used in the sense of "go" or "pass." *Doren v. Gillum* (1893), 136 Ind. 134, 136-139, and cases cited; 2 Sharswood & Budd's Lead. Cas. in Real Prop., 273; *Beatty v. Trustees, etc.* (1885), 39 N. J. Eq. 452, 462, 463; *Johnson v. Askey* (1901), 190 Ill. 58, 60 N. E. 76; *Blackmore v. Blackmore* (1900), 187 Ill. 102, 58 N, E. 410; *In re Bennett's Estate* (1901), 134 Cal. 320, 66 Pac. 370; *Halstead v. Hall* (1883), 60 Md. 209, 213, 214. See, also, *Taylor v. Stephens* (1905), 165 Ind. 200, 205, 206, and cases cited; *Borgner v. Brown* (1893), 133 Ind. 391.

It follows that, under the allegations of the second paragraph of the answer and the amended cross-complaint, the undivided one-third of said real estate described in 4. the petition was not "liable to be made assets for the payment" of the indebtedness of said estate. The court therefore erred in sustaining the demurrer to the second paragraph of appellants' answer and in sustaining the demurrer to the amended cross-complaint.

The court also erred in overruling appellants' demurrer to the amended petition, because it did not contain the allegations required by §2854 Burns 1908, §2338 R. S. 1881.

5.

Judgment reversed, with instructions to sustain appellants' demurrer to the petition and to overrule the demurrers to the second paragraph of answer and the amended cross-complaint, and for further proceedings not inconsistent with this opinion.